IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUTOFLEX LEASING-DALLAS I, LLC, | § § § | |
| Plaintiff, | § § § | |
| VS. | § § | Civil Action No. 3:16-CV-2589-D |
| AUTOFLEX LLC, et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants move to dismiss this action for lack of personal jurisdiction or improper venue, or, alternatively, to transfer the case under 28 U.S.C. § 1404(a) and/or 28 U.S.C. § 1406(a). Concluding that the court cannot exercise *in personam* jurisdiction over the defendants, the court grants their alternative motion to transfer this case to the Northern District of Florida, Gainesville Division, pursuant to 28 U.S.C. § 1406(a).

I

This dispute stems from use of the name "Autoflex." In August 2016 plaintiff Autoflex Leasing-Dallas I, LLC ("Autoflex Dallas") served defendants Autoflex, LLC ("Autoflex Florida") and Govinda Romero ("Romero") with a cease and desist demand, enclosing a copy of its registered United States Service Mark No. 1,880,091 ("Autoflex Service Mark") and notice of possible infringement. Autoflex Dallas filed this lawsuit soon thereafter. Autoflex Dallas alleges that, by using the name "Autoflex" in promotional material and commercial conduct, defendants have engaged in (1) trademark infringement

of the Autoflex Service Mark, (2) false advertising under § 43 of the Lanham Act, 15 U.S.C. § 1125, and (3) unfair competition and false advertising under Texas law.

Both defendants reside in Gainesville, Florida. Defendant Romero serves as managing member of Autoflex Florida and maintains his domicile in Gainesville. Defendant Autoflex Florida is a limited liability company, incorporated under Florida law, that maintains its principal and sole place of business in Gainesville. Autoflex Florida primarily sells, finances, and markets its vehicle inventory and services in two North Florida counties. In addition, Autoflex Florida owns and operates a website registered to Romero, "www.autoflexllc.com" ("the Website"). Compl. at 2. The Website allows users to view vehicle inventory and access basic information, like Autoflex Florida's operating hours, Gainesville address, and local telephone number. The Website also features a "Contact Us" page, an online credit application, and a portal for users to make payments on vehicles purchased from Autoflex Florida. Although Autoflex Dallas alleges that defendants "advertise[], solicit[], negotiate[], and transact[] business" through the Website, it does not assert that defendants ever sold a vehicle in the state of Texas or to a Texas resident. *Id.* at 2. Instead, Autoflex Dallas alleges that defendants maintain a "prevalent commercial presence" in Texas through operation of the Website alone. *Id.* at 2, 4.

Autoflex Florida and Romero move to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), or, alternatively, to transfer pursuant to 28 U.S.C. § 1404(a) or § 1406(a). They contend that they do not physically operate, own any property, hold assets, or employ people in Texas. Defendants also maintain that Autoflex Florida has never sold or financed a car

to a Texas resident. Autoflex Dallas opposes both motions, contending that defendants should have "reasonably anticipate[d] litigation in this District" based on service of multiple cease and desist letters, continued operation of the Website, and use of multiple search engines, such as Google. Compl. at 3-4.[1]

II

The court must first determine whether it can exercise personal jurisdiction over Autoflex Florida and Romero.

The Lanham Act does not authorize nationwide service of process. *See, e.g.*, *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F.Supp.2d 366, 371 (N.D. Tex. 2010) (Fitzwater, C.J.). Accordingly, absent a controlling federal statute regarding service of process, the determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. *See Ham v. La Cienega Music, Co.*, 4 F.3d 413, 415 (5th Cir. 1993). The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court next resolves whether the exercise of personal jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev., LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Autoflex Florida and Romero would

---

[1]In its response brief, Autoflex Dallas requests that the court allow it to conduct jurisdictional discovery if it is inclined to grant defendants' motion. Because the court concludes that Autoflex Dallas has failed to demonstrate that jurisdictional discovery would materially alter the result and reasoning of this decision, it denies the request.

be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *see also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).[2]

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. For the court to properly exercise specific personal jurisdiction, the defendants must have "purposefully directed" their activities at residents of the forum, and the litigation must result from alleged injuries that "arise out of or relate to" the defendants' activities directed at the forum. *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de*

---

[2]To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

General jurisdiction allows a court to exercise personal jurisdiction over a defendant even when the defendant's contacts with the forum state are unrelated to the cause of action. *See Mink*, 190 F.3d at 336. For a court to exercise general jurisdiction, a defendant's contacts must be "continuous and systematic." *Id.* (citations omitted). General jurisdiction over a foreign corporation is proper "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct. 746, 751 (2014) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The district court usually resolves the jurisdictional issue without conducting a hearing, and this case is no different. *See Ham*, 4 F.3d at 415.

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted). This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted. *See, e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

Further, when considering a motion to dismiss for lack of personal jurisdiction, a court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized methods of discovery. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

III

The due process inquiry begins with determining whether Autoflex Florida and Romero have sufficient minimum contacts with the forum state of Texas. *See Mink*, 190 F.3d at 336. Autoflex Dallas has the burden of establishing defendants' minimum contacts. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).

A

Autoflex Dallas does not appear to rely on general jurisdiction to establish that the court can exercise *in personam* jurisdiction over Autoflex Florida and Romero. *See* P. Br. 7-9 (relying on specific jurisdiction). The court will therefore turn to whether Autoflex Dallas has established that the court can exercise specific jurisdiction.[3]

B

At the outset, the court disposes of Autoflex Dallas' argument that defendants

---

[3]Autoflex Florida and Romero contend that the maintenance of an interactive website is of itself insufficient to establish general jurisdiction. The court agrees. "Maintenance of an interactive website is of itself insufficient to establish *general* jurisdiction." *Tempur-Pedic*, 758 F.Supp.2d at 373 n.3 (citing *Revell*, 317 F.3d at 471). "Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world," maintenance alone is not enough to be "continuous." *Revell*, 317 F.3d at 471 (noting the test of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997), adopted in *Mink*, is "not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts" for general jurisdiction to lie).

"reasonably anticipate[d] litigation in this District" based on multiple cease and desist letters. Compl. at 3.

It is axiomatic that the "unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Here, defendants did not purposefully avail themselves of Texas law simply by virtue of receiving Autoflex Dallas' demands letters. *See id.*[4]

C

The court examines next whether the operation of the Website constitutes "minimum contacts." *See Tempur-Pedic*, 758 F.Supp.2d at 373.

When specific jurisdiction is based on online interactions via an Internet website, the Fifth Circuit follows the sliding scale adopted in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). *See Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 900-01, 900 n.10 (N.D. Tex. 2000) (Fitzwater, J.) (citing *Mink*, 190 F.3d at 336) (interpreting *Zippo*). *Zippo* requires the court to assess the

---

[4]The same is true for Autoflex Dallas' allegations of injury in the state of Texas due to the nature of a trademark action. Although the overall personal jurisdiction calculus accounts for the place of plaintiff's harm, the minimum contacts analysis focuses on whether the *defendants* directed activities toward the forum state. *See Carrot Bunch Co. v. Computer Friends, Inc.*, 218 F.Supp.2d 820, 826 (N.D. Tex. 2002) (Buchmeyer, J.) (analyzing personal jurisdiction in online trademark dispute, emphasizing foreseeability of plaintiff's injury, but reiterating that defendant must "intentionally direct[]" tortious activities toward the forum state to satisfy minimum contacts).

level of interactivity of the defendants' website and prescribes a separate course of action for each of the three categories of websites: (1) where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction; (2) where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper; and (3) where a website falls somewhere in between, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the [w]ebsite." *Mink*, 190 F.3d at 336.

The Website falls in the middle of the *Zippo* sliding scale. Autoflex Dallas contends that the Website operates as "a virtual store," but it offers only conclusory statements as support. Compl. at 3. Certainly, the "Contact Us" and credit application forms establish that the Website does more than passively exist for advertising purposes. *See Am. Eyewear*, 106 F.Supp.2d at 901. But the Website only permits users to communicate and exchange contact, credit, and payment information with the operator, Romero. Therefore, the Website falls in the middle of the *Zippo* scale. *See id*; *see also People Sols., Inc. v. People Sols., Inc.*, 2000 WL 1030619, at *3-4 (N.D. Tex. July 25, 2000) (Lindsay, J.) (holding that interactive website allowing users to view products, download brochures, fill out forms, and place orders online fell in the *Zippo* middle ground).

Having determined that the Website falls in the middle of the *Zippo* scale, the court next examines the interactivity and commercial nature of exchanged information. *See Mink*, 190 F.3d at 336. Autoflex Dallas contends that Autoflex Florida and Romero maintained a

prevalent commercial presence in Texas through the Website. As support, Autoflex Dallas unsuccessfully attempts to analogize the present case to the facts in *Tempur-Pedic*. In *Tempur-Pedic* the parties agreed that the defendant had made multiple sales to Texas residents, although they disagreed on the exact number of Texas sales and on the number of sales that the plaintiff had initiated. *Tempur-Pedic*, 758 F.Supp.2d at 374. Regardless of the exact number, one of defendant's agents had acted in accordance with the website's offer "to sell and deliver to any of the contiguous 48 states in the United States" when he specifically pursued a transaction with a Texas resident after learning of the buyer's Texas residence. *Id.* Thus personal jurisdiction was proper. *Id.*

By contrast, in the present case, nothing suggests that defendants have made any sales in the state of Texas or to Texas residents. In fact, Autoflex Dallas only alleges that Autoflex Florida "advertises, solicits, negotiates, and transacts business" via the Website. Compl. at 2. Nowhere does Autoflex Dallas allege—nor has it produced prima facie proof—that Autoflex Florida or Romero sold or financed a vehicle within the state of Texas or with a Texas resident. While it is hypothetically possible that a Texas resident could fill out the contact or credit forms, Autoflex Dallas does not allege that any Texas resident ever did, much less that a transaction resulted. Conversely, Autoflex Florida and Romero deny having communicated or transacted business with Texas residents through the Website. Thus Autoflex Dallas' allegation that Autoflex Florida "maintains a prevalent commercial presence within the Texas market" based on possible future sales or communications is a conclusory assertion that is insufficient to establish minimum contacts. Compl. at 4. *See*

*Mink*, 190 F.3d at 337. Under *Zippo* "personal jurisdiction is based on *actual* internet sales to forum residents, not the mere possibility of sales." *CMC Steel Fabricators, Inc. v. Franklin Inv. Corp.*, 2016 WL 3418974, at *2 (N.D. Tex. June 22, 2016) (Boyle, J.) (citing *Mink*, 190 F.3d at 337).[5]

The court therefore concludes that Autoflex Dallas has failed to make a prima facie showing of minimum contacts necessary to support a finding of specific *in personam* jurisdiction over Autoflex Florida and Romero.[6]

IV

Because the court cannot exercise *in personam* jurisdiction, it turns next to the question whether this case should be dismissed or transferred

A

When a district court lacks personal jurisdiction, it can dismiss the case pursuant to Rule 12(b)(2). *See Herman*, 730 F.3d at 466. Alternatively, if the court determines that transfer is "in the interest of justice," it can transfer the action to "any district or division in which it could have been brought." *See id.* (citation omitted) (quoting 28 U.S.C. § 1406(a)).

---

[5]Autoflex Dallas also maintains that jurisdiction is proper because the Website can be accessed in Texas via search engines such as "Google." Compl. at 4. But this does not of itself establish that Autoflex Florida and Romero were doing business in the state of Texas. To hold otherwise would enable this court to exercise personal jurisdiction over the defendants without conducting an analysis of the Website under the *Zippo* sliding scale.

[6]Absent sufficient minimum contacts, the court need not analyze the "fair play and substantial justice" prong of the personal jurisdiction analysis. *See, e.g.*, *Mink*, 190 F.3d at 335-36. Because the court cannot exercise personal jurisdiction, a full venue analysis is likewise unnecessary. *See Herman v. Cataphora*, 730 F.3d 460, 465-66 (5th Cir. 2013).

Under § 1406(a), a court can order the transfer regardless of whether it has personal jurisdiction over the defendants. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). Section 1406(a) specifically applies when an action "lay[s] venue in the wrong division or district." 28 U.S.C. § 1406(a). Accordingly, transfer is proper when an obstacle prevents prompt adjudication of the case in the district where it was brought originally. *See Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985) (citing *Dubin v. United States*, 380 F.2d 813, 815-16 (5th Cir. 1967)). Lack of personal jurisdiction is one such obstacle. *See id.* Thus § 1406(a) facilitates transfer from a federal court lacking personal jurisdiction to one possessing it. *See Herman*, 730 F.3d at 466.

District courts have broad discretion in deciding whether to order a transfer. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). In some cases, "the interests of justice may be best served by requiring the plaintiffs to begin at the beginning in the proper forum." *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987) (citations omitted).[7]  In others, "the 'interest of justice'

---

[7]Autoflex Florida and Romero correctly note the analytical differences among transfers due to lack of personal jurisdiction, due to improper forum, and due to inconvenient forum under § 1404(a). When this court determines whether to transfer a case under § 1404(a), "plaintiff's choice of venue is . . . entitled to deference." *Mex. Foods, LLC v. Mi Rancho Meat Mkt.*, 2015 WL 891666, at *1 (N.D. Tex. Mar. 3, 2015) (Fitzwater, J.) (quoting *AT&T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (citation omitted)). It also considers the private and public interest facts outlined in *Volkswagen II*. *See* 545 F.3d at 315. But when, as here, the court transfers a case based on the court's lack of personal jurisdiction, it need not engage in a full *Volkswagen II* analysis. *See, e.g.*, *Herman*, 730 F.3d at 466.

instructs courts to transfer cases to the appropriate judicial district, rather than dismiss them." *Chenevert v. Springer*, 2009 WL 2215115, at *4 (S.D. Tex. July 22, 2009) (citations omitted). The decision to transfer is often made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *See, e.g.*, *Mex. Foods*, 2015 WL 891666, at *1. Courts generally prefer transfer to dismissal. *Wolf Network, LLC v. AML Diagnostics, Inc.*, 2016 WL 1357742, at *3 (N.D. Tex. Apr. 5, 2016) (Boyle, J.) (citing *Scott v. U.S. Army*, 2008 WL 3914835, at *1 (W.D. Tex. June 30, 2008)) (noting trend favoring transfer over dismissal).

B

The court concludes that this case should be transferred rather than dismissed. As earlier noted, Romero is domiciled in Florida, both defendants regularly conduct business in Florida, and the events giving rise to Autoflex Dallas' claims occurred in Florida. The Florida court can exercise personal jurisdiction over Autoflex Florida and Romero. *See Burger King*, 471 U.S. at 472; *Daimler*, 134 S.Ct. at 751. The transfer saves both the parties and courts time and money. *See Mex. Foods*, 2015 WL 891666, at *1. And Florida is a proper venue for this lawsuit. *See* 28 U.S.C. § 1391(b)(1)-(3) (stating venue is proper in a judicial district where (1) defendants reside, (2) a substantial part of the events giving rise to the claim occurred, or (3) a court can exercise personal jurisdiction). The court therefore transfers this case to the Northern District of Florida, Gainesville Division.[8]

---

[8]Although Autoflex Florida and Romero appear to have changed their requested transfer district between filing their initial alternative motion to transfer (i.e., Northern

\* \* \*

Accordingly, the court finds that it lacks *in personam* jurisdiction and it grants defendants' alternative motion to transfer this lawsuit to the Northern District of Florida, Gainesville Division, pursuant to 28 U.S.C. § 1406(a).

**SO ORDERED**.

February 23, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

District of Florida) and their reply (i.e., Middle District of Florida), Autoflex Dallas has in its response acquiesced to a transfer to the Northern District of Florida as an alternative venue. Accordingly, because both defendants reside in Gainesville, the court finds that a transfer to the Northern District of Florida, Gainesville Division, best serves "the interest of justice." *See* 28 U.S.C. § 1406(a).